FILED
COURT

2012 AUG -1 PM 1:58

CLERK OF COURT
BY,

## IN THE SUPERIOR COURT OF GUAM

REKHA HEMLANI,                    )         CIVIL CASE NO. CV1980-10
                                  )
                    Plaintiff,    )
                                  )         **DECISION AND ORDER**
        v.                        )
                                  )
KISHORE HEMLANI,                  )
                                  )
                    Defendant.    )
                                  )

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on the 16th day of April, 2012, for hearing on Defendant's Motion for Summary Judgment. Attorney Daniel J. Berman represented the Plaintiff, and Attorney Peter F. Perez represented the Defendant. The Court now issues the following Decision and Order on the matter presented.

## DISCUSSION

Summary judgment should be granted when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Iizuka Corporation v. Kawasho International (Guam), Inc., 1997 Guam 10 ¶ 7. The initial burden is on the moving party and the court must review the facts in the light most favorable to the non-moving party. Id. at ¶ 8. However, if the movant can demonstrate that there exists no genuine issue of material fact, the non-movant cannot merely rely upon the assertions contained in the complaint, but must

produce significant probative evidence showing that there is a genuinely disputed issue of material fact that must be determined at trial. Id.

A genuine issue exists when there is "sufficient evidence" establishing a factual dispute requiring resolution by a fact-finder. Id. (citing T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987)). The factual dispute must concern a "material fact." Id. Whether a fact is material is determined by the governing substantive law; if the fact may affect the outcome, it is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Plaintiff Rekha Hemlani has filed an action for breach of contract on the basis of a loan contract between Rekha Hemlani and Kishore Hemlani, wherein she alleges that she lent the principal amount of $270,000.00 to Kishore Hemlani on December 1, 2009, at the interest rate of 16% per annum, and Kishore executed a promissory note in Rekha Hemlani's favor for the repayment of these sums, yet he has never made any payments to her in breach of the agreement. Pl.'s Compl., ¶¶ 5–7 (filed December 13, 2010). The Defendant argues that Rekha Hemlani is a person engaged in the business of making loans, and therefore, this loan was a "consumer" loan, which is void, and no payments are due thereupon, because she did not have a business license to make such a loan to him.

The moving party carries the burden of showing the court the relevant information which it believes demonstrate the absence of an issue of material fact. The moving party is not required to negate each element of the non-moving party's case. Rather, the moving party satisfies and discharges its burden by establishing the absence of evidence to support the non-moving party's case. Edwards v. Pacific Fin. Corp., 2000 Guam 27 ¶ 7; and Kim v. Hong, 1997 Guam 11 ¶ 6 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

The following facts are undisputed. On December 1, 2009, the Defendant borrowed money in the amount of $270,000.00 from the Plaintiff, Rekha Hemlani, for business purposes, to be repaid at an interest rate of 16% per annum. Decl. of Rekha Hemlani, p. 1, ¶¶ 3–5 (filed March 23, 2012). Plaintiff Rekha Hemlani has not held a business license to make consumer loans, and did not have a business license to make commercial loans until January 26, 2011. Decl. of Rekha Hemlani, p.1, ¶ 1 (filed February 7, 2011).

There are no disputed facts in this case. There are merely disputed conclusions of law based on these facts. Accordingly, summary judgment as a matter of law is appropriate if sufficient admissible evidence is presented to prove or disprove the claim presented.

1) Is the Loan a Regulated or Unregulated "Consumer Loan" or "Other" Loan?

Guam adopted the 1968 Uniform Consumer Credit Code in its entirety as Title 14 of the Guam Code on June 30, 1969. The Uniform Consumer Credit Code was subsequently amended and another version was published in 1974. However, Guam's adoption of the 1968 Uniform Consumer Credit Code has remained intact, except where amended in a few portions.

Under Guam's adoption of the UCCC, a "loan" includes:

(a) The creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third party for the account of the debtor; (b) The creation of debt by the opening of an account with the lender entitling the debtor to draw immediately on the lender; (c) The creation of a debt pursuant to a preexisting credit card or similar arrangement; and (d) The forbearance of a debt arising from a loan.

14 GCA § 3106 (2012).

Title 14 distinguishes between multiple different types of loans, regulated, unregulated, consumer, and "other" loans. *See* 14 GCA §§ 3104, 3201, 3501, 3601, 3602, and 3605 (2012).

The Code particularly distinguishes between "consumer" loans and "other" loans, the latter to which Articles 1–5 of Title 14 do not apply, stating, "[t]his Chapter applies to consumer

loans, including regulated loans; in addition Article 6 applies to loans other than consumer loans. 14 GCA § 3102. "Consumer" loans are loans made by professional lenders to individuals for personal or agricultural purposes; not for business or home mortgage purposes, and not secured by interests in real property or business collateral. 14 GCA § 3104. "Other" loans are those loans which do not meet the criteria for categorization as consumer loans, and which may not have finance charges "in excess of twenty-four percent (24%) per year" applied if the principal of the loan is more than $25,000.00. 14 GCA § 3602(1)(a) and (2).

The Code further distinguishes between regulated consumer loans and unregulated consumer loans, "(1) Regulated loan means a consumer loan made pursuant to a revolving loan account; or (2) Any other consumer loan in which the rate of the loan finance charge is in excess of that provided by the provisions on loan finance charge for consumer loans (§ 3201)." 14 GCA § 3501.

Unregulated consumer loans must have an interest rate of less than "ten percent (10%) per year;" however, they are otherwise unlicensed and unregulated. 14 GCA § 3201(a). Regulated consumer loans may have higher interest rates, 14 GCA § 3508, but may only be made by licensed lenders:

> No person shall engage in the business of making regulated loans or taking assignments of rights to payment arising out of regulated loans unless the person is a supervised financial organization or has first obtained a license from the Administrator authorizing him to make regulated loans. A person authorized to make or take assignments of regulated loans shall be known as an authorized lender.

14 GCA § 3502.

Pursuant to 14 GCA § 5201(5) a debtor is under no obligation to repay an unlicensed lender who makes a regulated consumer loan, and may recover all payments made, if any:

If the creditor has violated the provisions of this Title applying to authority to make regulated loans (§ 3502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge. If he has paid any part of the principal or of the loan finance charge, he has a right to recover the payment from the person violating this Title or from a transferee of that person's rights to whom debt is then owing. No action pursuant to this Subsection may be brought in this Territory more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was paid.

14 GCA § 5201(5)(2012).

Defendant Kishore Hemlani argues that Plaintiff Rekha Hemlani is a person who is in the business of making loans, who made a regulated consumer loan to him, but is unlicensed to do so, and therefore, the December 1, 2009, loan and promissory note are void under 14 GCA § 5201(5), thus negating any alleged breach for failure to pay on the loan and promissory note.

Rule 56, as supplemented by CVR Rule 7.1(d)(1)( C) of the Local Rules of the Superior Court of Guam, requires that motions for summary judgment and oppositions to summary judgment be accompanied and authenticated "by affidavits or declaration of persons with personal knowledge through whom they could be introduced at trial." Zoslaw v. MCA Distributing Corp., 693 F.2d 870, 883 (9th Cir.1982), cert. denied, 460 U.S. 1085 (1983); see also Adickes v. S. H. Kress & Co., 398 U.S. 144, 159 (1970); Piper v. United States, 392 F.2d 462, 464 (5th Cir. 1968); Jones v. Menard, 559 F.2d 1282, 1285 n. 5 (5th Cir. 1977); 6 Moore's Federal Practice P 56.11(1. 8), at 207 (2d ed. 1948); id. P 56.22(1), at 1304; 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2738.

GRCP Rule 56(e) specifically and unequivocally restates this proposition; "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." GRCP Rule 56(e).

Although the rule specifically references "affidavits," for the purposes of GRCP Rule 56(e), "since 1982 on Guam, and 1976 under Federal law, unsworn declarations under penalty of perjury are statutorily equivalent, with limited exceptions, to affidavits." Duenas v. Yama's Co., Inc., Civ. No. 90 00062A, 1991 WL 255834, *5 (D.Guam App.Div. 1991)(citing 6 GCA § 4308; 28 U.S.C. § 1746; Carter v. Clark, 616 F.2d. 228 (5th Cir.1980); and Dickinson v. Wainwright, 626 F.2d. 1184 (5th Cir. 1980).

It is clear that under Rule 56, a party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'" demonstrate proper evidentiary support for its factual allegations. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Rule 56(e) specifically requires any allegations or exhibits to be submitted in a form which would be admissible at trial.

Defendant Kishore Hemlani sets forth in his Motion for Summary Judgment that the evidence to support this Motion for Summary Judgment is actually attached to his "Memorandum In Support of Motions to Bar Action and Stay of Proceedings and Dismissal [ ] filed on January 13, 2011," and he asserts that he "incorporates said Memorandum and its attached Exhibits 'A', 'B' and 'C' as if fully set forth herein." Def.'s Mot. For Sum. Jud., p. 1, lines 21–25 (filed on October 31, 2011). Here, the Court encounters its first problem of proof, as the Court issued an Order on May 4, 2011, finding that this motion and memorandum was improperly filed, and informing Defendant Kishore Hemlani that his "Motion to Bar Action and Motion to Stay Proceedings and Dismissal" would not be considered until properly filed pursuant to CVR 7.1. Hemlani v. Hemlani, Civil Case No. CV1980-10, Order, p. 3, lines 1–16 (filed May 4, 2011). Defendant Kishore Hemlani never corrected the deficiency in the filing of this motion.

The Court may refuse to consider any of the attachments to the improperly filed "Motions to Bar Action and Stay Proceedings and Dismissal," and will do so. *See* Local Rules of the Superior Court of Guam CVR 7.1(k) (2012); and <u>Rong Chang v. M2P, Inc.</u>, 2012 Guam 1, ¶¶ 49–52, and 69. Defendant Kishore Hemlani has attached no evidentiary materials to his Motion for Summary Judgment. Accordingly, Defendant Kishore Hemlani has provided the Court with no admissible evidence to support his Motion for Summary Judgment, and summary judgment may be denied on this basis. However, in the alternative, the Court finds that even if this excluded evidence is considered, it fails to set forth the proof necessary to award summary judgment in favor of Defendant Kishore Hemlani.

If the Court examines the improperly filed evidence attached to the Motion to Bar Action and Stay Proceedings and Dismissal, the proof adduced thereby sets forth the following facts: (1) Plaintiff Rekha Hemlani did not have a business license to make consumer loans on December 1, 2009, when she made a loan to Defendant Kishore Hemlani, Decl. of Kishore Hemlani, Exhibits B and C (filed January 13, 2011); (2) over the course of seven years spanning from the year 1991 through 1998, an individual named Moti U. Hemlani made sixteen mortgage loans to individuals, secured by real property, Decl. of Kishore Hemlani, Exhibit A, Documents 1–4, and 6–17 (filed January 13, 2011); (3) in 1997, Rekha Hemlani jointly made one mortgage loan with Moti U. Hemlani to an individual which was secured by real property, Decl. of Kishore Hemlani, Exhibit A, Document 5, Instrument # 482267 (filed January 13, 2011); and (4) Rekha Hemlani's business licenses and registrations prior to January 26, 2011, pertain only to the occupations of service rental, home rental, and ownership of a sole proprietorship, Decl. of Kishore Hemlani, Exhibits B and C (filed January 13, 2011).

Plaintiff Rekha Hemlani presents no evidence to controvert these facts, but presents arguments that these facts do not establish that the December 1, 2009 loan was a void consumer loan. She first argues that the December 1, 2009, loan was not a consumer loan because 14 GCA § 3401(1) excludes loans of more than $25,000.00 from the provisions of "[t]his Article." 14 GCA § 3401(1). The Court finds this argument irrelevant, as it is clear that "[t]his Article" refers to "Article 4," regarding "Limitations on Agreements and Practices." 14 GCA § 3401(1) does not exclude loans of more than $25,000.00 from the provisions of this "Chapter" or this "Code." A comprehensive reading of the code reveals that loans in excess of $25,000.00 are encompassed and contemplated under this Chapter of the Code. 14 GCA §§ 3602(1)(a) and (2), 3501 and 3502.

However, the Court agrees with the arguments that the December 1, 2009, loan was not a consumer loan, based on the definition provided in 14 GCA § 3104.

Where a Guam statute is derived from or similar to a state or federal statute, the state or federal cases interpreting the statute constitute persuasive authority in Guam. Gibbs v. Holmes, 2001 Guam 11 ¶ 15.

With only minor variation, both the 1968 and 1974 versions of the Uniform Consumer Credit Code define a "consumer loan" as a loan made by a creditor regularly engaged in the business of making loans in which the debtor is a person other than an organization where the debt is incurred primarily for a personal, family, household, or agricultural purpose; the debt is not for a commercial purpose, or is not secured by business collateral or by an interest in land; and the amount financed does not exceed $25,000, subject to a few exceptions. UCCC § 3.104 (1968); and UCCC § 1.301(15))(1974).

The Uniform Consumer Credit Code has been adopted in some form in eleven other jurisdictions; Colorado, Idaho, Indiana, Iowa, Kansas, Maine, Oklahoma, South Carolina, Utah, Wisconsin, and Wyoming. Accordingly, cases from these jurisdictions are persuasive if they interpret similar provisions of the code adopted in Guam.

a) Defendant has Failed to Prove that Plaintiff Rekha Hemlani is a Person Regularly Engaged in the Business of Making Loans

14 GCA § 3104 defines a "consumer loan":

Definition: Consumer Loan. (1) Except as provided in Subsection (2), consumer loan is a loan: (a) *made by a person engaged in the business of making loans*; (b) in which the debtor is a person other than an organization; and (c) *in which the debt is incurred primarily for a personal, family, household or agricultural purpose.* (2) Consumer loan does not include a loan which is secured primarily by: (a) a business collateral, if at the time the loan is made the value of this collateral is substantial in relation to the amount of the loan; or (b) an interest in land, if at the time the loan is made the value of this collateral is substantial in relation to the amount of the loan, and the loan finance charge, however calculated, does not exceed ten percent (10%) per year calculated on the unpaid balances of the principal according to the United States rules. For the purpose of calculating the rate of the loan finance charge, (i) non-periodic charges made at the inception of the loan which are included in the loan finance charge shall be amortized over the agreed term of the loan, notwithstanding that the loan is paid prior to the agreed maturity, and (ii) charges for the privilege of prepaying the loan shall not be included in the loan finance charge.

14 GCA § 3104 (emphases added).

In order to constitute a "consumer loan" a loan must meet all three criteria of 14 GCA § 3104(1)(a). *See also* Barnes v. Helfenbein, 548 P.2d 1014, 1017 (Okla. 1976). In this case, if the Court considers the evidentiary materials submitted by the Defendant, Kishore Hemlani, he has failed to meet his burden of proof to show either that Plaintiff Rekha Hemlani is a "person engaged in the business of making loans," or that the debt was "incurred primarily for a personal, family, household or agricultural purpose." Based upon these two failures of proof, he

has failed to show that the loan is "consumer" loan under 14 GCA § 3104, and therefore, void due to Plaintiff's lack of licensure under 14 GCA § 5201(5).

In Brown v. Fenner, 757 P.2d 184 (Colo. Ct. App. 1988), the Colorado Court of Appeals, examining its own enactment of the 1968 Uniform Credit Code, and a provision identical to 14 GCA § 3104 (former Colo. Stat. Ann. § 5-3-104), found that a transaction in which a realtor made a personal loan to a borrower at the rate of 50% per annum was not a "consumer loan" because the lender was not a person regularly engaged in the business of making loans as required for the transaction to qualify as a consumer loan. Id., at 184.

In Barnes v. Helfenbein, the Supreme Court of Oklahoma determined that a loan of $500,000 at an annual rate of 38.502%, secured by a real estate mortgage covering land owned by the borrower, was neither a "consumer loan" under the Oklahoma enactment of Uniform Consumer Credit Code (1968) section 3.104 (Okla. Stat. Ann. tit. 14A, § 3-104), nor a consumer related loan under Code section 3.602 (former Okla. Stat. Ann. tit. 14A, § 3-602), but rather an "other loan" under Code section 3.605 (Okla. Stat. Ann. tit. 14A, § 3-605), because the lender was not an individual regularly engaged in the business of making loans. Barnes, 548 P.2d at 1018. In addition, the court noted that the loan was "primarily secured by an interest in land" under Code section 3.105 (Okla. Stat. Ann. tit. 14A, § 3-105), its interest rate exceeded that section's 10% limit, and the debt was incurred to permit business speculation on land values, rather than for a personal, family, household, or agricultural purpose, as required under section 3.104. Based on all of these factors, the court concluded that the loan fell within the category of "other loans" under Code section 3.605, under which the parties to a loan other than a consumer loan or a consumer related loan were permitted to contract for the payment by the debtor of any loan finance charge not in excess of 45%. Id.

In <u>Bekins Bar V Ranch v. Huth</u>, 664 P.2d 455 (Utah 1983), the Supreme Court of Utah found that loans made by a real estate broker to a corporate rancher to refinance and provide operating funds for the ranch as it struggled to extricate itself from a bankruptcy proceeding were not "consumer" loans as defined in the Utah enactment of Uniform Consumer Credit Code (1968) section 3.104 (former Utah Code Ann. § 70B-3-104). <u>Id.</u>, at 460–61. The court explained that the loans did not satisfy the requirements of section 3.104(1)(a) (former Utah Code Ann. § 70B-3-104(1)(a)), defining a "consumer loan" as a loan made by a person regularly engaged in the business of making loans in which the debtor is a person other than an organization, in part, because the lender, a real estate broker, was not a person "regularly engaged in the business of making loans." The court concluded that the loans were other or "nonconsumer" loans under Code section 3.605 (former Utah Code Ann. § 70B-3-605), which permitted parties to contract for a loan other than a consumer loan or a consumer related loan. <u>Id.</u>

The aforementioned cases determine regular engagement "in the business of making loans" without citing any number of loans required to satisfy the definition, instead relying on the stated business occupation of the lender as proof that the lender did not qualify under UCCC Section 3.104. In this case, neither party has provided specific proof as to Plaintiff Rekha Hemlani's primary occupation. Defendant Kishore Hemlani declares that Plaintiff Rekha Hemlani is in the business of making loans; however, the evidence he has provided does not support this statement. The evidence he has provided proves that another person, Moti U. Hemlani is or was a person who engaged in making loans. At best, the documentation attached to his declaration proves that Plaintiff Rekha Hemlani has engaged in making two loan transactions within the last nineteen years, a mortgage executed in 1993, under Instrument #

482267, and the loan made between the parties on December 1, 2009. The documentary evidence further tends to show that Rekha Hemlani engaged in the business of retail, and retail and home rentals. Under the aforementioned cases, it might appear that Plaintiff Rekha Hemlani does not qualify as a person "regularly engaged in the business of making loans" under 14 GCA § 3104.

However, the Court need not rely on stated occupation as determinative in this case. As purposeful and particularized guidance, one court has provided a working and tangible interpretation of a provision identical to 14 GCA § 3104. For the purposes of the provision of the 1968 Uniform Consumer Credit Code defining the term "consumer loan," in part, as a loan made by a person regularly engaged in the business of making loans, the Court of Civil Appeals of Oklahoma recently found that a person is "regularly engaged in the business of making loans" if that person makes more than 25 loans or more than 5 loans in the preceding calendar year. Bunch v. Terpenning, 229 P.3d 574, 578–79 (Okla.Ct.App. Div. 4, 2009)(citing to 14A Okl.St.Ann. § 3-104).

The Bunch court stated, "Bunch argues that the definition of the regular engagement in the business of making loans can be determined from the definition of the "regular extension of consumer credit" found in the Code. We find this argument persuasive." Id., at 578. The Oklahoma court reasoned that:

> Based on the number of federal and state cases applying Regulation Z to cases involving consumer loans, the similarity of language defining consumer credit and consumer loans in the Code, and the similar disclosure requirements, we find no reason to apply a different interpretation of the language "regularly engaged in the business of making loans." *Therefore, a person is regularly engaged in the business of making loans for purposes of section 3-104 of the Code if that person makes more than 25 loans or more than 5 loans secured by a dwelling in the preceding calendar year.*

Id., at 579 (emphasis added).

In a case from Maine, St. Jean v. Racal Mortg., 952 F. Supp. 22 (D. Me. 1997), *vacated and remanded on other grounds*, 155 F.3d 6 (1st Cir. 1998), the District Court of Maine took this reasoning one step further and granted summary judgment to the lender in an action by the borrowers, who asserted that their loan was void because it violated a state statute (Me. Rev. Stat. Ann. tit. 9-A, § 9-201) incorporating the Maine enactment of Uniform Consumer Credit Code (1974) section 2.301 (Me. Rev. Stat. Ann. tit. 9-A, § 2-301) on authority and licensure to make regulated consumer loans. Id., at 26.

The court found that a credit services organization making its very first mortgage loan in the State of Maine was not a "creditor" under the Maine version of Uniform Consumer Credit Code (1974) section 1.301(18) (Me. Rev. Stat. Ann. tit. 9-A, § 1-301(17)), defining "creditor" (more narrowly than the uniform laws definition) as a person who "regularly" extends credit in consumer credit transactions and providing that a person "regularly" extends consumer credit only if that person extended credit more than five times in the preceding calendar year, and thus, was not subject to the licensure requirements of the Code for that particular loan. Id. The court explained that the licensure statute at issue applied only to consumer loans made by parties who had already made more than five loans in a calendar year, and that the lender in this case did not fall within the statutory definition at the time it made its first loan, even though it eventually made more than five loans in the calendar year. Id. In so holding, the court rejected the borrowers' argument that if an entity is in the business of consumer lending and anticipates that it may make more than five loans in a calendar year, it must obtain a license before making the first such loan. The Court found that it was not necessary for a lender to determine in advance whether it would qualify as a person who regularly engages in the business of making loans

during any particular year, and thus, that a party would only be required to obtain a license for any such loans after the first five loans made within that year. Id.

Under the holding of either the Bunch case or the St. Jean case, a party who has made fewer than five loans in any calendar year cannot qualify as a person who "regularly engages in the business of making loans." In this case, there is proof only that Plaintiff Rekha Hemlani made a single loan in the year of 2009. Decl. of Rekha Hemlani, p. 1, ¶ 3 (filed March 23, 2012). Further, there is no proof that Plaintiff Rekha Hemlani has ever made more than a single loan within the space of one year's time. Decl. of Kishore Hemlani, Exhibit A (filed January 13, 2011). Accordingly, she cannot be considered a person who is in the business of making loans for the purposes of 14 GCA § 3104, and was not required to obtain a license before making a loan to Defendant Kishore Hemlani on December 1, 2009 under 14 GCA § 3502.

Defendant Kishore Hemlani cites to no authority in claiming that Plaintiff Rekha Hemlani is an unlicensed lender who is in the business of making loans, and therefore, that the loan is void as a consumer loan. He merely makes this assertion in his declaration and his motion, with no case law or other authority to support this proposition. Based upon the persuasive case law cited herein, the Court finds that Defendant Kishore Hemlani has provided no evidence to show that Plaintiff Rekha Hemlani has made more than five loans in a year to any person or entity, and therefore, there is no evidence that she "regularly" engages in the business of making loans, as required for the December 1, 2009, loan to constitute a "consumer" loan under 14 GCA § 3104.

    b) <u>Defendant has Failed to Prove that the Loan was made for a Personal, Family, Household, or Agricultural Purpose</u>

Defendant Kishore Hemlani has also failed to prove that the December 1, 2009, loan was obtained for a "personal, family, household or agricultural purpose" in order to constitute a consumer loan under 14 GCA § 3104. Defendant Kishore Hemlani presents no evidence as to the purpose of the loan, and his declaration is silent as to this issue. In opposition, Plaintiff Rekha Hemlani has declared that she lent the money to Defendant Kishore Hemlani for the stated purpose of providing capital for his businesses and business projects. Decl. of Rekha Hemlani, p. 1, ¶¶ 4–5 (filed March 23, 2012).

In Hall v. Owen County State Bank, 370 N.E.2d 918 (Ind. Ct. App. 1977), the Indiana Court of Appeals held that a loan for the purchase of semitractor-trailers for use in a trucking business was not a consumer loan under the Indiana enactment of Uniform Consumer Credit Code (1968) section 3.104(1) (former Ind. Code Ann. § 24-4.5-3-104(1)), defining a "consumer loan" as one in which the debt is incurred primarily for a personal, family, household, or agricultural purpose. Id., at 933. Affirming a judgment for a bank in an action against a borrower to recover the amount due on three promissory notes, the court found that the trial court properly declined to apply a remedy to a creditor based upon an improper charge for credit life and health insurance under the notes. The court found that remedy section was limited to consumer credit sales and consumer loans, and thus was inapplicable to the loan at issue. Id.

In Union Story Trust & Sav. Bank v. Sayer, 332 N.W.2d 316 (Iowa 1983), the Supreme Court of Iowa held that loans made by a bank to finance a commercial venture for construction of two dwelling units were not "consumer loans" within the meaning of the Iowa enactment of Uniform Consumer Credit Code (1974) section 1.301(15) (former Iowa Code Ann. § 537.1301(14)). Id., at 319. The court reversed the trial court's judgment against the bank on one of the loans, holding that section 3.208 (Iowa Code Ann. § 537.3208), requiring a lender to

provide a guarantor a separate written notice that contains a completed identification of the debt that he may have to pay and reasonably informs him of his obligation with respect to it, was by its own terms only applicable to a "consumer credit transaction" and that the only loan transaction that is a consumer credit transaction is a "consumer loan," an essential element of which under section 1.301(15) is that the debt be incurred primarily for a personal, family, or household purpose. Since it was undisputed that the purpose of both loans to the borrower was to finance a commercial venture for construction of dwelling units, the court determined that neither loan fell within the definition of a "consumer loan." Id.

The court in First Nat. Bank of Creston v. Creston Implement Co., 340 N.W.2d 777 (Iowa 1983), explained that, as found in the Sayer case, in order for a loan to constitute a "consumer loan" under the definition in Code section 1.301(15) of the Iowa enactment of Uniform Consumer Credit Code (1974)(former Iowa Code Ann. § 537.1301(14)) the debt must be incurred primarily for a "personal, family, or household" purpose; and under this standard, three transactions in which a businessman guaranteed three commercial loans by signing promissory notes, as a guarantor were commercial transactions and therefore, did not qualify as "consumer loans." Id. at 779.

The court in Westgate State Bank v. Clark, 642 P.2d 961 (Kan. 1982), held that a loan incurred to rent out recreational vehicles to the general public as part of a business enterprise was not a "consumer loan" under the Kansas enactment of Uniform Consumer Credit Code (1974) section 1.301(15) (former Kan. Stat. Ann. § 16a-1-301(13)), defining a "consumer loan" as one in which the debt is incurred by a person primarily for personal, family, or household purposes. Id., at 965.

In <u>Anderson v. Foothill Industrial Bank</u>, 674 P.2d 232 (Wyo. 1984), a loan incurred primarily for the purpose of financing the startup of a mail route business was not a "consumer loan" as defined in the Wyoming enactment of Uniform Consumer Credit Code (1968) section 3.104 (Wyo. Stat. Ann. § 40-14-304), rather it was a commercial loan. <u>Id.</u>, at 235–36.

The Supreme Court of Oklahoma found that where the primary purpose of a loan evidenced by a promissory note was to finance the borrower in the establishment of his business and profession as a physician's assistant, the loan was not a "consumer loan" within the meaning of the Oklahoma enactment of Uniform Consumer Credit Code (1968) section 3.104 (Okla. Stat. Ann. tit. 14A, § 3-104). <u>Tax/Investments Concepts, Inc. v. McLaughlin</u>, 670 P.2d 981, 982–84 (Okla. 1982).

The court affirmed the judgment for the lender in its action for judgment on the note, and against the borrowers on their counterclaim that asserted that the loan obligation was void and unenforceable against them because the loan was a loan made by a lender that did not have legal authority under the Code to make such loans. <u>Id.</u> The court determined that there was sufficient competent evidence in the record to support the finding of the trial court that the loan in question was not a "consumer loan" in that it was not incurred "primarily" for a personal, family, household, or agricultural purpose as required by the definition of a consumer loan under section 3.104(1)(b) (Okla. Stat. Ann. tit. 14A, § 3-104(2)), and therefore, could not be void under the UCCC. <u>Id.</u>

Finally, in <u>Bown v. Loveland</u>, 678 P.2d 292 (Utah 1984), the Supreme Court of Utah held: "This transaction is clearly not a consumer loan since Loveland, a realtor, is not regularly engaged in the business of making loans and the debt was not incurred by the Bowns primarily

for a personal, family, household, or agricultural purpose, but for use in a stone-cutting business." Id. at 296.

The court relied on the Comment of Commissioners on Uniform State Laws suggesting that the purpose for which § 70B–3–602 (Article 6 of the UCCC), was drafted was to define and separate out loans which do not fit the definition of "consumer" loans:

> Many relatively small credit transactions with individuals do not fall within the general provisions of the act because the purpose of the transaction is not personal, family, household, or agricultural. However, a debtor in a small transaction for a business purpose may need some protection in credit transactions. Therefore, Part 6 of this Article extends a measure of protection over a special category of relatively small loans defined as consumer related loans. The principal transactions covered are (1) a loan by a lender not regularly engaged in making similar loans, (2) a loan to an individual for a business purpose, and (3) a loan to an organization . . . .

Id.

This comment is also instructive to this Court in determining whether the December 1, 2009 loan is a "consumer" loan or an "other" loan under Article 6 of Title 14. The cases from other jurisdictions that have adopted the UCCC almost uniformly find that a loan made for business purposes does not qualify as a "consumer loan" under Section 3-104 of the Code. The only evidence presented in this case shows that the December 1, 2009, loan was made by Plaintiff Rekha Hemlani to Defendant Kishore Hemlani for business purposes. Defendant Kishore Hemlani does not dispute this, and cites no case law or authority to the contrary. Accordingly, the Court finds that the December 1, 2009, loan was not a "consumer loan" under 14 GCA § 3104.

c) Only Regulated Loans are Void Under the UCCC

14 GCA § 3502 (5), under which Defendant Kishore Hemlani seeks to have the December 1, 2009, loan declared void, states:

If the creditor has violated the provisions of this Title applying to authority to make regulated loans (§ 3502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge. If he has paid any part of the principal or of the loan finance charge, he has a right to recover the payment from the person violating this Title or from a transferee of that person's rights to whom debt is then owing. No action pursuant to this Subsection may be brought in this Territory more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was paid.

14 GCA § 3502(5)(2012).

A regulated loan is "a consumer loan made pursuant to a revolving loan account; or (2) any other consumer loan in which the rate of the loan finance charge is in excess of [10%]." 14 GCA § 3501; *see also* 14 GCA § 3201(1).

The first requirement of 14 GCA § 5201(5) is the existence of a "regulated" loan. Only consumer loans are regulated loans. 14 GCA § 3501(1) and (2).

The Court has already found that the December 1, 2009, loan was not a consumer loan at all. Accordingly, it was not a regulated consumer loan, nor an unregulated consumer loan, and 14 GCA §§ 3502 and 5201 are inapplicable. Based on the evidence submitted, the Court finds that the loan was an "other" loan contemplated by Article 6 of Title 14. Therefore, Plaintiff Rekha Hemlani was not required to comply with the licensure mandates of 14 GCA § 3502, and the loan is not void under 14 GCA § 5201(5).

2) Is Summary Judgment Proper?

A court may grant summary judgment whenever the result is mandated by law. "Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment *sua sponte* against the moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'" Gospel Missions of America v. City of Los Angeles, 328 F.3d 548, 553 (9th Cir.2003) (quoting Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir.1982)).

Guam courts may grant summary judgment *sua sponte*. As pertinently stated by the District Court of Guam:

> A court may enter summary judgment sua sponte or even in favor of a non moving party. The major concern is not of the court's "power" to so act, but of notice and an opportunity to respond afforded the party against whom summary judgment will be entered. Here, the appellants, in their opposition to summary judgment, addressed and adequately discussed both the appellees' title to the property . . . thus making it evident that the appellants were not only given the opportunity, but did in fact present their theories regarding the issues raised by the pleadings. Accordingly, we conclude that the summary judgment disposed of all issues raised in the complaint and counterclaim and is a final decision in all matters below.

Flores v. Camacho, Civil Action No. 84-0064A; 1985 WL 56582, at *2 (D. Guam App. Div. 1985)(internal citations omitted).

In this case, only the Defendant has requested summary judgment, but both parties have had a full and fair opportunity to present argument and evidence on all claims. Accordingly, summary judgment could be granted in favor of the Plaintiff, even though she has not so moved, if she has provided sufficient evidence to prove her claim.

The Court has a copy of the loan document and the promissory note in the file, attached to the Complaint. Pl's. Compl., Exhibits A and B (filed December 13, 2010). Accordingly, if the Court were permitted to consider the allegations of the complaint and these documents as evidence, it would appear that she entered a valid contract with the Defendant and that he breached this contract to her detriment, thus proving her claim. However, a party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'" in order to demonstrate support for genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). To this end, only "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 600 F.2d

820, 823 (4th Cir. 1991); *accord* Williams v. Adams, 935 F.2d 960, 961 62 (8th Cir. 1991); Conaway v. Smith, 853 F.2d 789, 792 93 (10th Cir. 1988); McElyea v. Babbitt, 833 F.2d 196, 197 98 (9th Cir. 1987); Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 80 (5th Cir. 1987); and Hooks v. Hooks, 771 F.2d 935, 945 46 (6th Cir. 1985).

In Guam, "[a] breach of contract claim consists in allegation of the following elements: (1) the contract; (2) plaintiff's performance of the contract, or excuse for nonperformance; (3) defendants' breach; and (4) the resulting damage to plaintiff." Marianas Hospitality Corp. v. Premier Business Solutions, Inc., Civil Action No. 07 00002, Order Re: Defendant's Motions to Dismiss, *9 (D. Ct. Guam January 14, 2009) (citing to Reichert v. General Ins. Co., 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968)).

Plaintiff Rekha Hemlani alleges that Defendant Kishore Hemlani has never made any payments to Plaintiff Rekha Hemlani on the December 1, 2009, loan and promissory note. However, this statement appears nowhere outside of the Plaintiff's Complaint, and does not appear in either of the two declarations submitted by Plaintiff Rekha Hemlani. Further, the only copy of the promissory note alleged to have been breached is attached to the unverified complaint, and no copy is attached to either of the two declarations, accompanied by any statements verifying its contents. Because the complaint is not verified, the Court cannot consider its contents of the attached exhibits as evidence in support of, or in reply to, a motion for summary judgment. The Court has no admissible evidence before it to prove the existence of the promissory note, Defendant Kishore Hemlani's breach of that note, or resulting damages. Consequently, the Court cannot factually determine whether Defendant Kishore Hemlani has breached any agreement between the parties, and cannot grant summary judgment in favor of the Plaintiff until admissible evidence is provided.

## CONCLUSION

After considering the motion and the admissible evidence submitted, the Court finds that Defendant Kishore Hemlani has failed to prove that the loan made between the parties on December 1, 2009, was a consumer loan. The Court finds based on the evidence presented that the loan was valid as an "other" loan contemplated by Article 6 of Title 14, which is not void for the failure of Plaintiff Hemlani to obtain a license under 14 GCA §§ 5201(5) and 3502. Based upon the foregoing, the Defendant's Motion for Summary Judgment is DENIED. Summary judgment in favor of Plaintiff Rekha Hemlani might be appropriate as to her breach of contract claim; however, the Court cannot grant summary judgment as to the issue until admissible evidence of the promissory note and breach thereof is provided to the Court.

**IT IS SO ORDERED** this _AUG 0 1 2012_ .

HONORABLE ARTHUR R. BARCINAS
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.

AUG 0 1 2012

Valerie D. Tenorio
Deputy Clerk, Superior Court of Guam